Good morning, Your Honor. Stan Riney, representing the Petitioner, City of Toma. Many of the things that you've talked about in the preceding matter are at point or an issue in this case as well. In this case, though, we don't have an issue of credibility. It's simply an issue of whether the court properly found that the government had met its burden of proving that the conditions in Iraq had changed such that the petitioner no longer had a well-founded fear of persecution on account of the enumerated grounds. I take a little different position than my predecessor. I don't believe that in October of 2003 the judge made an appropriate ruling based on the evidence that was before the court at that time and the knowledge that he had about the conditions that were going on in Iraq. Essentially, all that had happened is... How about a predecessor? Who are you talking about? Mr. Douglas, who was here before. He preceded me here. Okay. Sorry, Your Honor. Not in this case. Okay. Not in this case. There was another attorney that had the case before the immigration judge. I had the case thereafter. Actually, I had it after the BIA. Did you move for reopening or change country conditions? I have not. Again, my position here is that when the court made its ruling, and I think if you carefully read the judge's opinion, it shows that the judge was speculating as to what was going to occur in Iraq, not what had happened at the time that the ruling was made in October of 2003. That was seven months after the invasion. There was a lot of euphoria then, but the reality was the Sunni insurgency, the very same people that were persecuting Iraqis, were still persecuting Iraqis on the basis of imputed political opinion as well as religion. That was going on then, and all the judge said was, and his language is telling, these coalition forces are present in large numbers in Iraq to protect law-abiding Iraqis from those who would threaten their safety. That hasn't happened since day one. It wasn't true then. It never became true, and he didn't have a factual basis for coming to that conclusion. If Thoma were forced to return to Iraq, it is clear that coalition forces would not tolerate anyone harming or threatening her for any of the reasons stated. That's happened consistently from the beginning to the end. Well, they don't tolerate it. There's just not enough people there. Well, my point is they're not able to protect her. She had a reasonable fear. She had a reasonable fear then. She's had a reasonable fear since, and she had a reasonable fear before, and the government had the burden of proving that she didn't have that fear, and they didn't meet their burden then. And you ask, in a lot of these immigration cases, I know the court asks, well, why didn't the person do this and that and the other thing that are available? These people are broke. I'm here quasi pro bono. I can't keep doing this. This is my last case, and I don't understand why we're even here. I don't understand why the government is allowing Iraqis in similar situations in now and won't take a look at this pipeline of cases and say enough is enough. We won't send them home. Before you get all wound up on that argument, it is correct, is it not, that at any time after the IJ issued the ruling in October of 2003, including up to this very moment, you could ask the BIA to reopen? Yes. I would not. You could ask the BIA to reopen even if you lost this proceeding, correct? That's correct. Well, why haven't you? I'm not getting paid for it. Well, come on. That is no answer, counsel. Well, the other reason is that I feel confident that this court is going to rule in my client's favor. Well, you just lost your credibility, but go ahead. Okay. See if you can revive it. I'll do my best, Your Honor. Until the State Department report came out in 2006 and counsel that were doing these cases became aware of it, in spite of all the facts that we put forward, the bombings of the churches, all of that, we were still getting the same opinion, that Christians were no different than anybody else, and it would not have been until basically about six, eight months ago that I would have even considered filing such a motion, and people weren't doing it. It started about right then. So you only file such a motion when you think it might win? Yes. You never file one to protect the record? My understanding is that you can file that at any time. That's undoubtedly true, but why not? If the situation has spiraled downward, wouldn't you agree from 2003? Absolutely. Let me finish my question. It was worse in 2004 than it was in 2003? I would agree. Worse in 2005 than it was in 2004? I agree. And worse today than it was a year ago today? Absolutely. And at any point along the line you could have, on behalf of your client, moved to reopen? It's clear that the BIA has that authority, right? Absolutely. It's not so clear that we do. Well, you have the right to take judicial notice of facts that are absolutely uncontroverted, and that is that Christians are being persecuted in Iraq. I can't imagine the government getting up and looking you in the eye and saying, Christians are not being persecuted. You've left your client vulnerable. I think I know the argument that's going to be made. You've left your client vulnerable to the almost irrefutable argument that you could have at any time moved to reopen. And as I pointed out before, it didn't seem to make a lot of sense to reopen when the BIA was ignoring the exact same argument that I would be making to reopen. So what you tell a client is, I've taken one arrow out of your quiver that will help you stay here because other people are losing similar cases. I think I've heard enough. You thought it was futile, so you didn't file. That's correct. But it was not futile after the 2006 report came out. I agree. And you're confident we can take judicial notice? There's no statutory or regulatory impediment to that? Not that I know of. And if you're wrong on that, then? I don't think, as I was trying to say when I started, I don't think you have to take judicial notice. I don't think that you can say that conditions in a country have changed and then speculate about what's going to happen in the future in terms of this individual. You have to remember this client not only had problems with the back party, had had problems with Muslims in general in the population. At the time of this hearing, she's testifying that her daughters are afraid to go out of the house for fear of being persecuted by Muslims. The Muslims came to the house and threatened her son to convert to Islam. That wasn't done by the back party. That was done by Muslims, and that was even prior to the time that the invasion began. My point is that at the time that the judge made this ruling in October of 2003, did not have a factual basis to say that the government had met its burden of proof. In proving that she no longer had a well-founded fear of persecution if returned. And what the court said was, well, we got rid of the back party. If we agreed with you, what's the remedy? To grant asylum at this time, or to make one more step in the process to remand and direct the BIA to grant asylum because the judge was wrong at the time. And do we need to reach withholding of removal? Not if you grant asylum. Well, asylum is a discretionary decision. Our understanding is that if we say they're entitled and we remand for exercise of discretion, it's construed as the equivalent of saying asylum shall be granted. Is that what you're relying on? Your Honor, that's beyond me. I understand what you're saying. I can't answer that question. You want to save a couple minutes for rebuttal? Thank you. Thank you. May it please the court, my name is Aliza Ali-Shmierny and I represent counsel for respondent, the acting attorney general, Peter Keisler. There's only one issue that you guys have identified in this case. Keep your voice up a little, please. Speak up. There's one issue before this court. Before you launch into the issue, can you tell us which unit you're with in DOJ? I'm with Office of Immigration Litigation. So you folks are the specialists? We're the specialists and I'm one of the new hires to come in and help out with the farming out of the other cases.  The issue is whether substantial evidence supports the claim. Just so we understand and don't start moving down the wrong path on false assumptions, if you're a new hire, to what extent has supervision in oil been involved in the workup of your or any of these Iraq cases? I'm fairly confident that I can answer your questions based on the supervision that I've received. Thank you. The issue is whether substantial evidence supports the claim. Myself, I suspect that Keisler comes out of the civil division. Indeed. Whether substantial evidence supports the agency's determination that Department of Homeland Security rebutted the presumption by a preponderance of the evidence, both the immigration judge and the Board of Immigration Appeals found that the record illustrated changed country conditions by a preponderance of the evidence. I just hate to say this, but you're just talking too fast for me. Okay, sorry. Just talk to me. Don't read to me. Okay. As you have highlighted, the issue here is whether the government successfully rebutted the presumption of changed country conditions. Okay, just to get a fundamental then, are you saying that we should construe the BIA opinion as having A, which it does say, accepted the testimony of the petitioner as credible? Yes. Okay, and that, based on that testimony, the BIA assumes that the petitioner has established past persecution on a protected ground. The Board of Immigration, no. I don't believe the Board, yes, the Board assumed past persecution to move to the assumption. And they assume that the burden therefore shifted to the government to establish, by preponderance of the evidence, changed country conditions. Absolutely. So if we disagree on whether or not the government carried its burden, is that the end of the process, or is there going to be another step? If you lose on your argument that you're about to make, which is that they did carry the burden, is the government's position that it goes back or that it stands or falls on whether or not the government carried its burden on the record at that time? The government's position is that it would go back under Ventura, that it hasn't fully been litigated, and depending on what record evidence you're using, the record, it depends, I guess, is the answer. And then if it does go back under Ventura, that it's open to both the government and to the petitioner to put in new evidence, current evidence about current conditions in Iraq? I believe, you know, without those facts in front of me, I can't tell you what. Well, we know that the circumstances have evolved, okay? So is it going to go back for a rehearing, retrial, reconsideration on the record that existed at the time this application was filed? Yes. IJ, or is it going to be supplemented by whatever has happened since then? No. If this court were to send it back down, it would be the four corners of the record. And so we should just say that the government failed to carry its burden, but remand for what? It is the government's position that you do not find that the government failed to meet its burden. No, I understand that, but I'm assuming that we do find that. I'm just trying to understand what's at stake here. And the question before us is whether or not we've heard in the prior cases that we have an option to take judicial notice perhaps, we have, or that in any event even petitioner in one case is saying send it back and let's start with a clean slate and we'll all talk about what's going on today. But you're saying, no, if we find that as a matter of law the government failed to carry its burden of establishing that the country conditions has changed as of the time that the BIA addressed it on that record, we should nonetheless remand it to the BIA for what? I'm sorry. Did he try the issue of to give the government another chance to re-argue what? Is the evidence going to change? No. Okay. So I don't understand what the purpose of the remand is under Ventura. Okay. Okay. So we have a, at least we know where the battle lines are, or the fault lines are, not battle. Okay. Okay. So thank you. You're defending of the IJ's, BIA's decision. The, whether DHS presented evidence sufficient to rebut the presumption is a finding of fact that is reviewed under the highly deferential substantial evidence test, which means it's not whether you can believe and agree with petitioner's contentions. It's whether the record compels reversal. Where the BIA expressly adopts the immigration judge's findings and reasonings as it did in this case, the court, this court will review the immigration judge's decision. On October 14th, 2003, DHS provided and the immigration judge admitted evidence of a fundamental change of country conditions. Now remember, we're looking at the record in 2003. The immigration judge found that Mrs. Toma's claim centered on harm to her family, allegedly inflicted by the Ba'athist regime ruled by Saddam Hussein. The immigration judge then found that Saddam Hussein was taken out of party, out of power, along with his Ba'athist regime. He found that the coalition forces, including the U.S. military, had taken control of Iraq. Again, we're looking at what happened in October, from April to October of 2003. I want to test your theory about that. Okay. In the early 1940s, there was a passenger ship called the St. Louis. It was filled with European Jews, and it crossed the Atlantic, who were voluntarily allowed to leave Germany, cross the Atlantic and come to Miami, Florida. And in an unfortunate, terrible act, the government refused to allow the people to land, the contents of that ship to land and seek asylum in this country. And the ship went back, and virtually all of the passengers on the St. Louis were sent to camps and died. If they had been allowed to land and sought asylum, they would have been had to have said that the Hitler regime allowed them to leave Germany on their own. And at that time, there was, at least as far as Americans knew, no credible evidence that there was a program planned to annihilate the Jewish population of Europe. So you're telling us that if we were reviewing a case like that under our current law, we would be constrained to the record that existed at that time, that is, the time the ship landed? And if we were hearing the case in 1945, after American forces liberated those camps, that we couldn't, or earlier than that, take into consideration that there was, in fact, an active program to annihilate the Jewish population of Europe? Is that what you're saying? I would argue that this court does not have the jurisdiction to do that. I would argue that under current laws today, the government's position is that petitioner's counsel and petitioner have the ability to reopen the case and get the record current through two mechanisms. That leads me to my next question. You concede that at any point along the way, they could have moved the BIA to reopen? Absolutely. This morning. Let me finish. Sorry. May even help you. Okay? They could even do it today. Absolutely. Or they could do it if we were to deny relief in this case. They could do it after we denied relief. Absolutely, and that is the government's position. Or wouldn't it make sense in this circumstance to mediate these cases aimed at directing these people to all ask the BIA to reopen? It's inconceivable to me that the board would not allow them to reopen. So that instead of trying to try this case on facts that don't exist or speculation about what might exist, the cases get resolved up or down on what is actually happening. I believe that is the point of the system of having a motion to reopen and a motion, I'm sorry, a successive asylum claim for changed country conditions. What is your position on mediating these cases? I don't have the authority to say yes to you, but I would love to go back to Washington, D.C. with that suggestion and get an answer for you and bring it back to you. Because it is the government's position that this court isn't properly able to take judicial notice. Believe me, we don't want to be doing things that we're not empowered to do. We're not fond of sticking our nose into the meat grinder. But we are looking to, if it were possible, humane resolution of cases. If prior counsel is correct that the government is not removing known aggravated felons who happen to be Iraqi refugees who are Christian, why in the world would they want to remove these people? None of these people have any kind of criminal record. And one of the most fascinating things about these cases is, at least as to three of them, they did the exact right thing. They went to the border and sought asylum. They didn't come in on a visa and overstay it. They didn't sneak into the country. They went to the border and knocked on the door and said, we're refugees from one of the most despicable regimes on the face of the earth, and we want asylum in the United States of America. And that is why we agree that when the record is stale, the petitioners need to go through the proper avenues, the regulations and the INA, and find a way to update the record. Unfortunately, that power doesn't reside in this body. But the power does reside in this body to look at whether or not the government carried its burden. So we can still do that. Great. But let me ask you this. On these motions to reopen, what percentage are granted? Oh, I don't have that sort of information. I mean, we don't see too many cases. Well, maybe it's because they're granted. But as far as I know, there are very, very few motions to reopen that are ever granted. I would like to highlight the point that if a motion is not granted, this court has the ability to review that decision on abuse of discretion. That's exactly correct, and that's why I'm trying to skip from the third inning to the bottom of the ninth if I can, okay? Appreciate that. And that's big of him to say that after last night's review. After my team got swept. But to get to the point, if through mediation all of these asylum seekers, Christians from Iraq, refugees, all move to reopen, then once that motion is made and the BIA takes the cases, then we can dismiss all of these appeals. If they're successful in reopening, we'll never see the cases again. If the BIA denies, then even this guy will understand that now is the time to file a petition for review with this court. And think of the people that can be protected by knowing the proper channels for that. All right. But I'd like to find out how many are granted. I don't have that number. I think that there's a particular factual circumstance in these cases. With all respect to my colleague, my dear friend and fellow Marine, it doesn't matter, does it? If they deny, we can review it. You can review it. If they grant, we'll never see it again, right? Indeed. You're smiling like the people that are handling this thing are very nice and kind and benign people. But I don't get that impression. Do you think I'm not nice? I said you're smiling like you are. I think you're nice. If they don't do it right, we're fully capable of telling them that they have not. Absolutely. You see, I'm 84 years old. I don't have enough time to waste on whether they're going to do it right or not. But you do have enough time to make sure that you use the proper channels and do not move outside of the boundaries that this court is constricted by under United States code. We understand. That depends on who's reading what works. No, I don't like to be restricted. I'm a free man. So when you talk that way, it makes me very, very nervous. That's okay. You make her nervous when you talk that way. Am I making you nervous? No. Because we do have to move on, I know. The prior two cases, you were here. I take it that the message you are saying you can take back would apply to those two cases as well. You can coordinate with your colleague. And if we were to offer the opportunity to mediate through our mediation services. Again, I'm not authorized. I don't know what the facts are. I'm asking if you can carry the message. Absolutely. As to, since you heard the arguments, you're not going to supplant Mr. Hoffman, but you will coordinate with him. And so, therefore, you'll get a message that reflects the thoughts of both of you. Okay. Are you counsel on Dawood? No. That's a Friday submitted case. Can I give you the number of that? Do you have a pencil? Yep. It's Ibrahim, I-B-R-A-H-I-M, Dawood, D-A-W-W, that's two W's, O-D, versus Gonzalez. And the number is, our number is 04-76209. 76209? Yes. I would like to, in sum, since my time is out, say that the department, the agency made the proper determinations of the record at that time. Therefore, this petition for review should be denied, not remanded, and not based on whether or not mediation will occur. That's the position of the government. Just so you understand our process, when we recommend invite mediation, we wait for the parties to tell us yea or nay. We do not ever feel disabled for making a decision on the merits, but we don't go through meaningless activities. That's why I was asking if we can get, I think all of us would like to know what the response is, and we'll wait for the response. When do you think we'll know? I can make calls. Can you call them now? We'll even let you use the government telephone. It's more complicated than that. I work for the government, so my phone is also. The issue, though, is that the board still has discretion, and so I'm not comfortable conceding that the board is going to agree to anything. Nobody is asking you to agree. We're familiar with the process that has been worked out by our mediation unit, DHS, OIL. So there's a group you can talk to in Washington that is familiar with that process. We do it frequently. Sometimes it works, sometimes it doesn't. We know. Judge Hawkins and I have both personally been involved in working on this mediation with the department process. We understand its constraints. All we are wanting to know is whether or not in these cases the government is willing, and you have a client. We know DHS is your client. Okay. Thank you. Come back to us. One thing I'll say in your favor is that I notice you're left-handed. We've got two left-handed judges here. All right.
judges: Pregerson, Hawkins, Fisher